**JOHNSON, Admrx., Plaintiff-Appellee, v. DUMECH, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20944.   Decided July 6, 1948.

Walter & Haverfield, Franklin A. Polk, Cleveland, for plaintiff-appellee.

E. A. Binyon, Cleveland, for defendant-appellant.

### OPINION

By MORGAN J.

Nick Dumech, defendant appellant herein, was the owner of a double house located at 3498 Scranton Road, Cleveland, Ohio. The upper suite was occupied by Hilda Hoffman. To

the rear of the upper suite was attached a small porch, access to which was through the suite occupied by Miss Hoffman.

On June 26, 1944, Hilda Hoffman went on the porch and the porch collapsed. She fell to the ground floor porch, a distance of some twelve feet. She was taken to a hospital and remained there until September, 1945 when she died, nearly fifteen months after the accident, as a result of the injuries received at the time of her fall.

On August 14, 1945, Hilda Hoffman began an action against the defendant for personal injuries. In her petition she alleged that she was a tenant of the upper suite of the double house owned by defendant, Nick Dumech, to which there was attached a porch in the rear; that she stepped on this porch on June 26, 1944, in a careful manner, in the ordinary use of said premises and that the porch gave way beneath her, causing her to fall to the ground and seriously injuring her in numerous respects set forth at length in the petition.

Plaintiff's decedent further alleged that several months before her injuries, she had notified the defendant that this porch was in need of repairs and the defendant told her he would repair the porch and that he proceeded to do repair work on the porch. That the defendant in repairing the porch attempted to strengthen the connection between the porch and the house by nailing a porch floor to the side of the house and by nailing reinforcements to the posts supporting said porch; that said repairs created the appearance of strengthening the connection between the porch and the house but the defendant had negligently and carelessly made said repairs and that his attempts to reinforce the connections between the porch and the house were unsuccessful; that because of the negligence of defendant in making said repairs to the porch, the porch fell to the ground and as a direct result of defendant's negligence plaintiff suffered the injuries enumerated in the petition.

After the petition was filed, but prior to the trial of the case, Hilda Hoffman died as a result of said injuries and Ila W. Johnson as administratrix of her estate was duly substituted as plaintiff in the action.

The case was afterwards tried and the jury returned a verdict for plaintiff in the sum of $10,000.00. The defendant appealed to the court of appeals.

The only error charged by defendant is that the verdict was not supported by the evidence and was manifestly against the weight of the evidence.

At the trial the plaintiff called the defendant as a witness for cross-examination. The plaintiff thereby waived the

provisions of §14495 GC, barring the right of the defendant to testify when the adverse party is an executor or administrator of a deceased person. The defendant also testified as a witness in his own behalf.

Defendant testified that he made some repairs to the porch about two years before the accident and also additional repairs about two months before the accident. The defendant was asked:

"Q. Two months before the accident at that time you leveled off this porch?

A. I don't level off nothing. It was the same then. Just fasten all around so it will stay there.

*      *      *      *      *

Q. Let's find out what the story is. When you did this rail fixing and the pillar fixing down here, was that two or three months before the accident happened?

A. Something like that.

Q. All right. Now, did you do anything to the porch either up here or down here in between that time of two months or three months?

A. I don't remember.

Q. You don't remember?

A. I not sure, I don't remember.

Q. Did you do no repairs of any kind between the two or three months period from when you did this last work down here when you fastened these pillars on from the outside? You said you wanted to make it a little safer. Did you do any repairs from that time to the time Miss Hoffman fell?

A. I don't remember.

Q. You don't remember?

A. No.

*      *      *      *      *

Q. On the day you made these pillar fastenings did you do anything to this molding—did you put in galvanized nails in that molding to fasten it to the porch?

A. I don't remember.

Q. You don't remember putting in nails in that molding on that particular day when you were doing the downstairs pillar fastenings?

A. I no remember that.

Q. You don't remember fastening those with galvanized nails?

A. I couldn't tell you because that was—how long it was. I work on that—I couldn't remember—I don't know.

Q. But you are positive that you did fasten the pillars down here on these two parts?

A. Yes, I fasten that because I * * * it looked to me not strong enough I put all around the extra molding and I nailed it all around  and I fasten with galvanized nails.  When I looking after the accident I don't see that galvanized nail. There must be something in that house that happened that's why I don't understand."

The defendant also testified as follows:

"Q. When was the first time you made repairs on that property after she (Hilda Hoffman) moved in?

A. Oh about three or four years later before the accident—two years before.

Q. Two years before the accident?  What repairs did you make?

A. I nailed it all around the railings and fasten it good to the wall.

Q. Wait:  All right—

A. And I put a little bit nailing on the floor too.

Q. Some nailing on the floor?

A. Yes, she don't look to me solid, see?

Q. Then I believe you testified on cross-examination, some two months before the accident happened you repaired a part?

A. Yes.

Q. Where was that?

A. That was about two months ago, downstairs, I put a new railing and I fasten post there and I fasten a new railing for the post—everything—see.

Q. What work did you put on the post?

A. I put a molding all around, I put in galvanized nails and I fasten it good.  I thought it sure good."

The law is well established that a landlord out of possession and control of rented or leased premises is not liable to a tenant in damages for injuries sustained resulting from a defective condition of the premises.

The appellee in this case concedes the above to be a correct statement of the law.  She maintains, however, that when the landlord elected to make repairs of any part of the rented premises it was his duty to make such repairs without negligence.  This was decided in an opinion by Chief Justice Cardozo in the case of Cullings v. Goetz, 256 N. Y. 287, syllabus:

 . "A landlord though a volunteer in making repairs to leased premises, is liable none the less to his tenant for negligence in making them."

The court said at page 258:

"It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. * * * The distinction in such cases is the old one between nonfeasance and misfeasance. * * * A landlord in these circumstances is not charged with liability on the basis of nonperformance of a voluntary promise. He is charged with liability, because having chosen to perform, he has thereby become subject to a duty in respect of the manner of performance. The cases are many in which liability has been enforced upon that footing for protection of a tenant. (cases cited * * *.) The tenant does not have to prove that by the negligent making of the repairs, what was wrong has been made worse. His case is made out when it appears that by reason of such negligence what was wrong is still wrong though prudence would have made it right."

To the same effect is Lasky v. Rudman, 337 Mo. 555, 85 S. W. (2nd) 501. The court said at page 502:

"The law is too well settled to admit of discussion that where, as here, the landlord is not bound by agreement to keep the leased premises in repair, he owes no duty to make ordinary repairs to the demised premises and is not liable in damages for personal injuries sustained on the premises, by reason of the defective condition thereof, by the tenant or others on or occupying the premises * * *. But, if a landlord who is not under contract to keep the demised premises in repair, voluntarily assumes to repair such premises, and does so negligently, he is liable in damages for all injuries resulting from such negligence." 32 American Jurisprudence Sec. 678:—

"**Liability for damages in making repairs and improvements;** Although a landlord ordinarily is not liable either to the tenant or his guests or invitees for the safe condition of the leased premises, the possession of which he has surrendered to the lessee, it is well established that if he undertakes to repair or improve the demised premises whether he is under an obligation imposed by a covenant on his part, to repair or improve or not, he is required to exercise reasonable care in making such repairs or improvements and is liable for injuries caused by his negligence or unskillfulness or that of his servants and employees in making them or in leaving the premises in an unsafe condition."

The defendant also contends that Miss Hoffman was guilty of contributory negligence by reason of the fact that she went on the porch after having been warned by the defendant not to do so. The important question for the jury was "when was this warning given?"

Miss Hoffman in the petition in this case stated that some months before the accident she had sent the defendant a letter calling his attention to the unsafe condition of the porch. There was evidence that defendant inspected the porch shortly after receiving Miss Hoffman's letter and afterwards he made repairs.

Mrs. Schley, the tenant on the lower floor, testified that defendant "came downstairs and told me" about his warning to Miss Hoffman not to go on the porch. The court then inquired of Mrs. Schley, who was in West Virginia at the time the accident happened, as to when that conversation occurred.

The court: "Can you relate it to the time that you left for West Virginia, a matter of weeks before, or days?

Mrs. Schley: No. I would say it was maybe two or three months before."

Mrs. Schley further testified as follows:

"Q. The repairs that Mr. Dumech made with the galvanized nails were made some time after he had talked about the dangerous condition of the porch?

A. Yes."

The jury by its verdict must have found that Miss Hoffman was not guilty of contributory negligence. The evidence justified the jury in finding that defendant's warning to Miss Hoffman not to go on the porch was given before he made the repairs in which he said he used "galvanized nails." After these repairs were made, the defendant believed the porch was in a safe condition. He testified:

"A. That's why somebody take that nails off * * * that porch no fall off because it was bad, but somebody do that, but I can't prove it because I was thirty miles far from there; I don't know who done it.

Q. When you fastened this, you fastened it good?

A. I believe it good because this look that floor is good. I fasten it good only I don't know who take that nail off. That galvanized nail on that molding * * * I don't know how it happened."

Also the defendant testified:

"Q. What you did in the way of repairs to that rear porch you thought was fastened pretty good, didnt you?
A. Yes.
Q. What you did, what you could see,—what you did you thought was fastened pretty good, is that correct?
A. Yes."

The defendant "fastened the porch so good" that he believed that somebody had interfered with the job or had pulled out some of the nails he had inserted. No evidence was offered by defendant to confirm any such suspicion. However, the jury was warranted in believing that the notice given by the defendant to Miss Hoffman not to go on the porch, was given before he had made the repairs.

The trial judge charged the jury as follows:

"The plaintiff bases its case on the claimed negligence on the part of the defendant in making whatever repairs he did make to this porch. So the first issue for you to resolve is the question of whether or not this defendant, Nick Dumech, was negligent in the manner and way in which he made whatever repairs he did make to the porch.

"If you find that he was not negligent, you need consider the case no further, because then your verdict should be for the defendant. If you find that he was negligent you should next consider whether such negligence was the direct and proximate cause of the collapse of the porch.

"Again, if it was not a direct and proximate cause of the collapse of the porch, you will find for the defendant. But, if it was a direct and proximate cause, that is, his negligence was the direct and proximate cause of the collapse of the porch, you will then consider whether Hilda Hoffman, herself, was negligent to any degree which contributed directly and proximately to the collapse of the porch and injuries to herself. And, if she, herself, was negligent which to any degree contributed to this accident, she cannot recover and again your verdict will be for the defendant."

Although the defendant "excepted to the charge of the court generally under the statute" the defendant in his brief filed in this court makes no claim of any error in the court's charge.

The issues in this case were fairly submitted to the jury and there was evidence on all the issues to sustain the verdict of the jury.

Miss Hoffman's hospital bills alone amounted to $2612.50. Excessive damages is not charged.

Therefore the judgment of the common pleas is affirmed. Exceptions. Order See Journal.

HURD, PJ, Concurs, SKEEL, J, dissents (see dissenting opinion).

## DISSENTING OPINION

No. 20944. Decided July 6, 1948.

By SKEEL, J.

This action comes to this court on appeal on questions of law from a judgment for the plaintiff in the common pleas court of Cuyahoga county. The plaintiff, Hilda Hoffman, died during the pendency of the action, and Ila W. Johnson, Administratrix, was substituted as party plaintiff.

On the 26 day of June, 1944, the deceased went upon the rear porch of her suite, the floor gave way and she fell to the rear porch of the first floor suite directly below.

Hilda Hoffman was a tenant of the defendant in an upstairs suite of a two-family house located at 3496-98 Scranton Road in the City of Cleveland. The defendant lived in Medina County and worked as a shearman at The Republic Steel Corporation. The plaintiff's decedent had been a librarian and office worker and was away from the property during working hours of the day. It was her habit to mail a check for the rent to the defendant and she would write the defendant a letter in case she wanted to see him and so arrange a definite time when she would be home. About two months before the accident which resulted in her death, some eighteen months later, Hilda Hoffman wrote to the defendant telling him when he could see her and stating that the rear porch of her suite was in need of repairs. About two months prior to receiving this letter the defendant put a railing around the rear porch of the first floor suite and at the same time put some molding around the foot of the posts that supported the rear porch of the second floor suite. The second floor rear porch could be reached only through a door leading to it from the kitchen of such suite. It was therefore for the exclusive use of the second floor suite. The defendant's testimony upon this part of the case is as follows:

"Q. What did she say in the letter?

A. She said, 'come up to look on the porch because porch no good condition.'

Q. Did you go over there?

A. I come up next day.

Q. The next day?

A. I come up because she's home that day. She told me, 'I be home that day' because I can't meet her home because she always some place. I come up in the morning there and I go look on the porch with her. I say, 'Mrs. Hoffman, no go any more on the porch.'

Q. What is that?

A. I told her not to go any more on the porch because porch is bad condition and I told her I am going to get some man I going to build a new porch and I put a new roof on. She say, 'that is swell.' 'That's the way I like it be.' I told her 'keep the door locked and nobody come to visit on the porch because porch is bad.' That time I come downstairs I told Mrs. Schley—she tell same way.

Q. Never mind, go ahead—

A. I go that time to the contractor's and I told him 'please do the job for me soon.' He says 'I take the job.' I says 'do the job soon as you can.' Then I go home. Two or three weeks later I come—I don't know was accident."

This evidence is corroborated by one of plaintiff's witnesses, Mrs. Schley, who lived in the first floor suite. She testified as follows:

"Q. Calling your attention to a period shortly before you went to West Virginia—Charleston I believe you said it was, can you tell the court and jury whether or not Mr. Dumech was at the premises making any repairs?

A. Well, I can't tell you just when. Mr. Dumech was good about that, whenever there were repairs he did them: He tried to do a lot himself. I remember that he told her not to use the porch, that it wasn't safe. Whether he did the repairs before or after he told her not to use it I can't say for sure, I can't—

Q. Now, Mrs. Schley, will you tell the court and jury just what type of repairs Mr. Dumech made to the back porch within a period of a month or two before you left for West Virginia?

A. He had reinforced the one post,—that I remember particularly,—and he mentioned that if—"

And on cross-examination she said:

"Q. Did you hear him say anything to her about fastening the door so no one could go out?

A. I didn't hear him say anything. He came downstairs and told me that he had warned her about using the porch. I didn't hear him tell her. Then a half hour or three-quarters of an hour after Mr. Dumech left, she came downstairs and told me the same thing."

The only possible theory upon which the plaintiff could recover in this case is that the defendant was negligent in making repairs to the back porch and that such negligence was a proximate cause of the injuries sustained by the decedent. The evidence clearly shows that the landlord was completely out of possession and therefore owed the tenant no legal duty as to the state of repair of the premises. **Burdich v. Cheadle et al, 26 Oh St 393.**

In the case of **Berkowitz v. Winston, 128 Oh St 611,** the court said:

"1. Promise by the lessor, to make repairs of premsies leased does not impose 'upon the lessor liability in tort to persons entering thereon at the invitation of the lessee.

2. Liability in tort is an incident to occupation or control; occupation and control are not reserved by an agreement to make repairs.

3. An owner of real estate who has surrendered possession thereof to a lessee is not liable to an employee of such lessee for personal injuries resulting from a defective condition of the premises though he had promised the lessee to make repairs."

A careful examination of the record discloses that at the place where the floor of the porch was attached to the rear of the house the wood had become decayed and rotted so that when the deceased stepped on to the porch the floor broke away from the house and fell.

There is not a scintilla of evidence that the defendant attempted any repairs to this part of the porch. He did attempt to reinforce the posts on the floor of the first floor porch but the evidence is wholly silent as to any causal relation between such repairs and the falling of the porch.

The record is clear also that the deceased not only knew of the dangerous condition of the porch but also that she was instructed not to use the porch because of its dangerous condition and to lock the door so that it could not be used.

Such being the undisputed evidence, even if there was a showing of negligence in attempted repairs, the deceased would have been guilty of contributory negligence as a matter of law.

For the foregoing reasons the judgment should be reversed and final judgment rendered for defendant appellant.